UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RASHADER LAWRENCE,

Plaintiff,

-against-

OCEAN PARK ACQUISITION, L.P.,
RELATED MANAGEMENT COMPANY, L.P.

Defendants.

**COMPLAINT**

Case No. 18-CV-6712

## PRELIMINARY STATEMENT

1.      Plaintiff, RASHADER LAWRENCE, brings this action pursuant to the Fourteenth Amendment to the U.S. Constitution, the Fair Housing Act, the New York City Human Rights Law and the Violence Against Women Act seeking declaratory and injunctive relief and damages.

2.      Plaintiff is a survivor of domestic violence who has been displaced together with her two minor children from her apartment within a low-income housing development subsidized by the United States Department of Housing and Urban Development ("HUD"), owned by Defendant Ocean Park Acquisition, L.P. and managed by Defendant Related Management Company, L.P.

3.      Plaintiff is a signatory to the lease for the subject apartment as co-head of household; her domestic abuser Isiah Spellman is the head of household.

4.      As owners and/or managers of the HUD subsidized premises, Defendants are wholly responsible to carry out its operation in accordance with federal and state anti-discrimination law including the Due Process Clause under the Fourteenth Amendment to

the U.S. Constitution, Title VI of the Violence Against Women Reauthorization Act of 2013 (the Violence Against Women Act, "VAWA"), Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act, "FHA") and the New York City Human Rights Law.

5.     In situations involving criminal domestic violence, federal law allows for a "bifurcation" of the lease and/or an emergency transfer to a different unit. The purpose of bifurcation and/or emergency transfer is to ensure that survivors of domestic violence can remain in their apartments or to transfer to a safer place and to prevent survivors from facing homelessness as a consequence of ending an abusive relationship.

6.     In April 2018, Plaintiff was violently attacked by Mr. Spellman at the subject premises. As a result of the incident, a criminal order of protection was issued against him. Because he lied to the authorities, stating that Plaintiff was an aggressor during the incident, a criminal order of protection was also issued against Plaintiff. Plaintiff was forced to flee her home to avoid further violence.

7.     After the incident, Plaintiff requested from Defendants bifurcation of the lease and an emergency transfer pursuant to VAWA so that she could remain in her home with her minor children with her abuser excluded, or move to a safer separate apartment while excluding her batterer through an Order of Protection.

8.     Solely based on the fact that orders of protection were issued against both Plaintiff's abuser and Plaintiff after the April 2018 incident, Defendants refused to grant Plaintiff's requests without making an appropriate inquiry into Plaintiff's assertion that she is entitled to VAWA protection and/or holding a hearing to determine who was the true victim of domestic violence.

9.     Defendants' failure to bifurcate the lease and/or to offer a VAWA emergency transfer to Plaintiff constitutes unlawful gender-based discrimination in violation of federal law and the New York City Human Rights Law, and deprives her of the protections she is entitled to as a domestic violence survivor pursuant to VAWA.

10.     Due to Defendants' refusal to grant Petitioner's requests for bifurcation and/or an emergency transfer, Plaintiff suffered the de facto termination of her subsidized tenancy without due process.  As a result of Defendants' violation of Plaintiff's right to due process as well as the gender-based discriminatory actions, Plaintiff and her two minor children have been displaced from their home and are at risk of homelessness.

## JURISDICTION AND VENUE

11.     This court has jurisdiction over Plaintiff's claims arising under the FHA and VAWA pursuant to 28 U.S.C. §1331.

12.     This court has jurisdiction over Plaintiff's Fourth and Fourteenth Amendment claims pursuant to 42 USC §§ 1983 and 1988 and 28 U.S.C. §1331.

13.     This court has supplemental jurisdiction over Plaintiff's City law claims pursuant to 28 U.S.C. § 1367.

14.     Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 *et seq.* as well as injunctive relief and damages.

15.     Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in the Eastern District of New York.  The Eastern District of New York is the judicial district where the apartment in question is located, where Defendants have their principal places of business, and where the facts giving rise to the instant claims occurred.

## PARTIES

16.     Plaintiff RASHADER LAWRENCE (hereinafter "Ms. Lawrence" or "Plaintiff") is a domestic violence survivor and signatory to the lease and/or co-head of household for the subject HUD-subsidized apartment.  In fear of her abuser Isiah Spellman (hereinafter "Mr. Spellman"), she currently temporarily resides with her two minor children in her parents' apartment in Queens while Mr. Spellman continues to occupy the subject apartment.

17.     Defendant OCEAN PARK ACQUISITION, L.P. (hereinafter "Ocean Park" or "Defendant Ocean Park") is a New York domestic limited partnership that owns the subject premises, 120 Beach 19th Street, Apt 2A, Far Rockaway, NY 11691, part of a 600-unit housing development.

18.     Upon information and belief, Defendant Ocean Park entered into a regulatory use agreement with HUD pursuant to Section 236 of the National Housing Act of 1934 (12 U.S.C.A. §1715z-1), which requires it to operate the building, including the subject premises, in compliance with the statutory and regulatory requirements governing HUD multifamily rental housing.

19.     Upon information and belief, Defendant Ocean Park also entered into a regulatory agreement with New York State Housing Finance Agency pursuant to the Low Income Housing Tax Credits (herein after "LIHTC") program (26 U.S.C.A. § 42(h)(4)), which mandates it to be in compliance with low-income housing rules.

20.     Defendant Related Management Company, L.P. (herein after "Related Management" or "Defendant Related Management") is a New York domestic limited

partnership that manages the subject premises located at 120 Beach 19th Street, Apt 2A, Far Rockaway, NY 11691.

## STATUTORY AND REGULATORY SCHEME

### Title VI of the Violence Against Women Act, amended as Violence Against Women Reauthorization Act of 2013

21.     In 2013, Congress reauthorized the 2005 Violence Against Women Act ("VAWA"), recognizing that survivors of domestic violence often face housing discrimination and risk homelessness when seeking to leave abusive situations. Congress further recognized that survivors were often evicted after repeated calls to the police for domestic violence incidents and disturbances to other tenants.  These victims faced "double victimization" by their abusers and their landlords.

22.     Title VI of the Violence Against Women Reauthorization Act of 2013 (hereafter "VAWA"), Pub. L. No. 113-4, 127 Stat. 54 (March 7, 2013), states that:

> No person may deny assistance, tenancy, or occupancy rights to housing assisted under a covered housing program to a tenant solely on the basis of criminal activity directly relating to domestic violence, dating violence, sexual assault, or stalking that is engaged in by a member of the household of the tenant or any guest or other person under the control of the tenant, if the tenant or an affiliated individual of the tenant is the victim or threatened victim of such domestic violence, dating violence, sexual assault, or stalking. 42 USCA § 14043e–11(b)(3)(A)

23.     On November 16, 2016, HUD published its VAWA Final Rule implementing the requirements of the VAWA Reauthorization Act of 2013. Implementing regulations for the VAWA Final Rule can be found at Code of Federal Regulations (CFR) Part 5, Subpart L, Protection for Victims of Domestic Violence, Dating Violence, Sexual Assault, or Stalking. 24 CFR §§ 5.2001 – 5.2011.

24.     Multifamily rental housing under Section 236 of the National Housing Act is a "covered housing program" whose owner(s) are responsible for the administration of VAWA protections with respect to the occupants of the premises. 24 CFR § 5.2003.

> Covered housing providers are obligated to provide tenants at the time of their admission to the housing, and at subsequent lease renewals, notification of their occupancy rights under VAWA, and a certification form, in a form approved by HUD, to be completed by the victim to document an incident of domestic violence, dating violence, sexual assault or stalking. 24 CFR § 5.2005.

25.     On June 30, 2017, HUD released Notice H 2017-05 which provides additional guidance regarding the implementation of VAWA for multifamily owners and management agents of properties including multifamily rental housing under Section 236 of the National Housing Act. See HUD Notice PIH 2017-05, available at

https://www.hud.gov/sites/documents/17-05HSGN.PDF

26.     VAWA provides for bifurcation of the lease of a domestic violence victim as follows:

> (1) A covered housing provider may in accordance with paragraph (a)(2) of this section, bifurcate a lease, or remove a household member from a lease in order to evict, remove, terminate occupancy rights, or terminate assistance to such member who engages in criminal activity directly relating to domestic violence, dating violence, sexual assault, or stalking against an affiliated individual or other individual:
> (i) Without regard to whether the household member is a signatory to the lease; and
> (ii) Without evicting, removing, terminating assistance to, or otherwise penalizing a victim of such criminal activity who is also a tenant or lawful occupant.
> (2) A lease bifurcation, as provided in paragraph (a)(1) of this section, shall be carried out in accordance with any requirements or procedures as may be prescribed by Federal, State, or local law for termination of assistance or leases and in accordance with any requirements under the relevant covered housing program. 24 CFR § 5.2009(a)

27.     The VAWA lease bifurcation provision further provides that the owner of a

covered housing program:

> [Is] encouraged to undertake whatever actions permissible and feasible
> under their respective programs to assist individuals residing in their units
> who are victims of domestic violence, dating violence, sexual assault, or
> stalking to remain in their units or other units under the covered housing
> program or other covered housing providers, and for the covered housing
> provider to bear the costs of any transfer, where permissible.

24 CFR § 5.2009(c).

28.     HUD's Notice PIH 2017-05 further provides that once a victim informs the

owner that a family member is committing domestic violence against him or her and

accordingly seeks protection pursuant to VAWA, the owner must provide notice of the

complainant's rights under VAWA to the extent such notice has not already been

provided. See HUD Notice PIH 2017-05, p. 34-35.

29.     HUD delegates to building owners the authority to conduct hearings to

determine the appropriateness of terminating the abuser's tenancy and/or subsidy.  Id., at

18.  With respect to lease bifurcation, however, HUD recommends that owners seek

court-ordered eviction of the perpetrator "to avoid unnecessary delay in the bifurcation

process." Id., p. 36.

30.     As a covered housing provider, Defendant Ocean Park is further obligated

to adopt an emergency transfer plan for the relocation of domestic violence survivors.

VAWA sets forth that:

> Each covered housing provider, as identified in the program-specific
> regulations for the covered housing program, shall adopt an emergency
> transfer plan, no later than June 14, 2017 based on HUD's model
> emergency transfer plan, in accordance with the following:
> (1) For purposes of this section, the following definitions apply:

(i) Internal emergency transfer refers to an emergency relocation of a tenant to another unit where the tenant would not be categorized as a new applicant; that is, the tenant may reside in the new unit without having to undergo an application process.

(ii) External emergency transfer refers to an emergency relocation of a tenant to another unit where the tenant would be categorized as a new applicant; that is the tenant must undergo an application process in order to reside in the new unit.

(iii) Safe unit refers to a unit that the victim of domestic violence, dating violence, sexual assault, or stalking believes is safe.

24 C.F.R. § 5.2005(e); see also HUD Notice PIH 2017-05, p. 29

31.    A tenant qualifies for such a transfer if it is expressly requested, and the tenant "reasonably believes there is a threat of imminent harm from further violence if the tenant remains within the same dwelling unit that the tenant is currently occupying…in the case of a tenant who is the victim of sexual assault…or reasonably believes …there is a threat of imminent harm from further violence if the tenant remains within the same dwelling unit that the tenant is currently occupying." 24 CFR § 5.2005(e)(2).

**32.**    HUD's Notice H 2017-05 indicates that owners are prohibited from denying assistance to complainants under VAWA on the basis of an "adverse factor" that is the result of the domestic violence in question. HUD specifically recognizes that depending on the circumstances, [a domestic violence victim may have] a criminal record as a direct result of domestic violence stemming from crimes committed by a victim to defend herself from such violence. See HUD Notice H 2017-5, pp. 7-9.

## Low Income Housing Tax Credit of the Tax Reform Act of 1986

33.    The Low Income Housing Tax Credit (hereinafter "LIHTC") program was established as part of the Tax Reform Act of 1986.  The LIHTC is the federal program

that provides tax incentives to encourage the utilization of private equity in the development of affordable rental housing aimed at low-income households. 26 U.S.C. § 42. Based on each state's population, the Internal Revenue Service (hereinafter "IRS") provides federal tax credits to state housing credit agencies (hereinafter "HCA"). 26 C.F.R. § 1.42-1. HCAs award tax credits to qualified project sponsors, who hold partner interests in the final ownership entities of developments, of proposed low-income housing projects who then use the tax credits to raise equity from private investors.

34. In New York, New York City Department of Housing Preservation and Development (hereinafter "HPD") allocates a portion of the New York state's LIHTC allotment to developers of new construction or substantial rehabilitation projects for which at least 20% of units are reserved for low-income households.[1]

35. Recipients of the LIHTC program benefits, including Petitioner herein, must follow all applicable federal laws and regulations. In New York City, at least 20% of the tenants who reside in the LIHTC buildings must have incomes below 60% of the area median income. 26.C.F.R. § 1.42-9. The Low Income Housing Tax Credit program is a "covered program" under VAWA. 34 U.S.C. § 12491(a)(3)(J).

36. Further, owners of affordable housing units under the LIHTC program must not discriminate against their tenants based on the status of the tenants. 26 U.S.C. § 42(h)(6)(B)(iv); 42 U.S.C. § 12745(a)(1)(D). The prohibited actions include discrimination based on gender and/or DV status.

---

[1] See https://www1.nyc.gov/site/hpd/developers/lihtc-qualified-action-plan.page

**Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988**

37.     Title VIII of the Civil Rights Act of 1968, also known as the Fair Housing Act (hereinafter "FHA"), as amended by the Fair Housing Amendments Act of 1988 (hereinafter "FHAA"), 42 U.S.C. § 3601 *et seq.*, states that "it shall be unlawful . . . [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, *or otherwise make unavailable or deny*, a dwelling to any person because of ... sex." 42 U.S.C. §3604 (a).  [emphasis added]

38.     The Section further states that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex." 42 U.S.C. § 3604 (b).

39.     Prohibited actions include "Evicting tenants because of their . . . sex." 24 C.F.R. §100.60 (b)(5).

40.     Title VIII further prohibits interference with any person in the exercise or enjoyment of rights guaranteed under, *inter alia,* 42 U.S.C. § 3604. 42 U.S.C. §3617.

41.     In a Memo dated February 9, 2011, entitled "Assessing Claims of Housing Discrimination against Victims of Domestic Violence under the Fair Housing Act (FHA) and the Violence Against Women Act (VAWA)," HUD states that:

> Statistics show that women are overwhelmingly the victims of domestic violence. An estimated 1.3 million women are the victims of assault by an intimate partner each year, and about 1 in 4 women will experience intimate partner violence in their lifetimes. The U.S. Bureau of Justice Statistics found that 85% of victims of domestic violence are women. In 2009, women were about five times as likely as men to experience domestic violence. These statistics show that discrimination against victims of domestic violence is almost always discrimination against women. Thus, domestic violence survivors who are denied housing, evicted, or

10

deprived of assistance based on the violence in their homes may have a cause of action for sex discrimination under the Fair Housing Act.

Id., at 2.

42.     HUD also mandates that owners and management agents to "comply with all applicable fair housing and civil rights laws and requirements in the implementation of VAWA requirements." HUD Notice PIH 2017-05.

## The New York City Human Rights Law

43.     The New York City Human Rights Law (hereinafter "City HRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, makes it an unlawful practice to discriminate against individuals in housing on the basis of sex. N.Y.C. Admin. Code § 8-107(5).

44.     The City HRL states that

It shall be an unlawful discriminatory practice for the owner, lessor, lessee, sublessee, assignee, or managing agent of, or other person having the right to sell, rent or lease or approve the sale, rental or lease of a housing accommodation, constructed or to be constructed, or an interest therein, or any agent or employee thereof:

(1) Because of the actual or perceived race, creed, color, national origin, gender, age, disability, sexual orientation, uniformed service, marital status, partnership status, or alienage or citizenship status of any person or group of persons, or because of any lawful source of income of such person or persons, or because children are, may be or would be residing with such person or persons …

(b) To discriminate against any such person or persons in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith;

N.Y.C. Admin. Code 8-107(5).

45.     The City HRL also prohibits discrimination in public accommodations and provides that:

It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of the actual or perceived … gender . . . to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof. N.Y.C. Admin. Code § 8-107(4)(a).

46.     Defendants are "provider[s] of public accommodation" within the meaning of the HRL, as "provider of public accommodation" is defined to include "providers … of goods, services, facilities, accommodations, advantages or privileges of any kind and places … where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold or otherwise made available." N.Y.C. Admin. Code 8-102(9).

47.     The HRL further states that "[i]t shall be an unlawful discriminatory practice for any person to . . . interfere with . . . or attempt to . . . interfere with any person in the exercise or enjoyment of . . . any right granted or protected" under the HRL. N.Y.C. Admin. Code § 8-107(19).

## STATEMENT OF FACTS

48.     Upon information and belief, Defendants Ocean Park and Related Management Company, L.P. are the owner and manager of a 600-unit low-income housing development known as the Ocean Park Apartments that is subsidized by HUD pursuant to a 2005 use agreement and an LIHTC agreement.Plaintiff's residence, 120 Beach 19th Street, Apt. 2A, Far Rockaway, New York 11691 (hereinafter "the Subject Premises"), is an apartment located within the development subject to the aforementioned mortgage financing agreement.

49.     Upon information and belief, as owner operator and manager of the HUD subsidized premises, Defendants are wholly responsible for its operation pursuant to HUD rules and regulations, including maintaining a waiting list of eligible tenants, deciding priorities for tenant admissions, signing leases with tenants that comply with HUD regulations, setting rents in compliance with HUD regulations, conducting periodic tenant income certifications, terminating the tenancies of families who are no longer eligible for the low-income apartments or who violate program regulations, and evicting tenants who materially or substantially fail to comply with their lease terms.

50.     Defendants are obligated to carry out its operation in accordance with federal and state anti-discrimination law including Title VI of the Violence Against Women Reauthorization Act of 2013 (the Violence Against Women Act), Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and the New York City Human Rights Law.

51.     Plaintiff is a 29-year old domestic violence survivor. She is the mother of two daughters, aged 10 years, and 22 months.

52.     In approximately October 2016, Plaintiff moved to the Subject Premises with Isaiah Spellman. He signed the lease as head of household; she signed the lease as co-head of household.

53.     At all relevant times and to date, Plaintiff remains income-eligible for occupancy of the Subject Premises.

54.     Plaintiff began her relationship with her now-estranged abuser Mr. Spellman in approximately 2010. He is the father of her 22-month old child.

55.    For years, Mr. Spellman has subjected Plaintiff to domestic violence including physical assaults that caused her to fear for her life.

56.    Due to fear that if she reported the domestic violence her daughters would be removed from her care, Plaintiff avoided reporting the abuse to authorities such as hospital staffers or to the police.

57.    Plaintiff also avoided reporting the abuse due to fear that Mr. Spellman would take violent action against her and her minor children.

58.    In 2014, Mr. Spellman became enraged after Plaintiff asked him to leave her mother's apartment. Mr. Spellman brutally assaulted Plaintiff physically and sexually, injuring her leg and causing it to bleed in the process. Although Plaintiff feared that her leg was seriously injured, she did not seek medical treatment because she feared reporting the abuse.

59.    In approximately August 2016, when Plaintiff was in an advanced state of pregnancy with her daughter with Mr. Spellman, Mr. Spellman again sexually assaulted Plaintiff, this time at his mother's home. Only because his mother overheard Plaintiff yelling, was the attempted rape interrupted.

60.    In approximately December 2016 at the bus stop near the Subject Premises, Plaintiff had a dispute with Mr. Spellman because he did not want her to drive his car. Her two young daughters were present during the incident, strapped into their car seats. Plaintiff tossed the car keys onto the ground, and Mr. Spellman demanded that she retrieve them. When she refused, Mr. Spellman attacked her, pulling her hair and kicking her leg below the kneecap. Plaintiff collapsed, and the pain in her leg was so severe that she could not get up. She did not seek medical treatment because of her fears of reporting

the abuse. She could not report to work for a month because of the pain in her injured leg which made it difficult for her to walk.

61.    On April 25, 2018, Mr. Spellman became enraged at Plaintiff during a dispute in their apartment at the Subject Premises. Mr. Spellman repeatedly struck Plaintiff and choked her. In her efforts to ward off Mr. Spellman, she ended up scratching his forehead. The police reported to the scene when Plaintiff called the police. Mr. Spellman lied to the reporting officers, and said that Plaintiff was an aggressor and that she had hit him in the head with a lamp. As a result, Plaintiff was arrested along with Mr. Spellman.

62.    On or about April 25, 2018, Plaintiff fled the Subject Premises and temporarily moved in with her parents to avoid further violence.  She has been without a permanent home ever since.

63.    Defendants' building security staff was notified immediately when the police arrived to the scene of the incident.  The security staff met the police officers and took the names of Plaintiff and Mr. Spellman and the apartment number.  After Plaintiff and Mr. Spellman were released from the precinct, Defendants' management staff asked both of them for a copy of the orders of protection.  Defendants' management staff told them to continue to pay rent, but did not inquire about what exactly happened on April 25, 2018.

64.    The criminal case was settled on June 21, 2018. As a result of Mr. Spellman's false report that Plaintiff had attacked him, an order of protection was entered not only against Mr. Spellman, but against Plaintiff.

65.     The orders of protection set forth that neither Plaintiff nor Mr. Spellman may come within 100 feet of the other absent an appropriate Court order. As a result, Plaintiff and her daughters are currently displaced from the Subject Premises where Mr. Spellman is continuing to reside.

66.     By letter dated June 15, 2018, Plaintiff's counsel requested, on Plaintiff's behalf, bifurcation of the lease for the Subject Premises. Specifically, Plaintiff requested that Mr. Spellman be removed from the Subject Premises based on his acts of domestic violence, and that an interim recertification be processed to reflect the change in household composition.

67.     On or about July 12, 2018, Plaintiff met a staffer of Defendant(s) charged with management of the Subject Premises, to request a VAWA emergency transfer to another apartment and bifurcation of the lease.   The staffer denied Plaintiff's request and informed her verbally that she cannot be relocated because Defendant's rules have changed and the situation was not an emergency situation.   Plaintiff explained to the manager that she was a true victim of the domestic violence and that the order of protection was issued against her based on Mr. Spellman's false representations.   The manager did not inquire about the details of the domestic violence incidence that occurred on April 25, 2018 and did not offer a hearing regarding Plaintiff's requests or otherwise comply with the requirements of VAWA or procedures in HUD Notice PIH 2017-05.

68.     On or about July 20, 2018, counsel for Defendant Ocean Park informed Plaintiff's counsel's office, the undersigned, that it would not grant the request for bifurcation because of the order of protection against Plaintiff. No hearing on the issue or

further assistance was offered to Plaintiff. Defendants' counsel further conveyed Defendants' position that if Plaintiff came back to the apartment and there were any further incidents of domestic violence, it may bring a nuisance case against her. Counsel for Defendant further conveyed that Defendant had commenced a nonpayment eviction proceeding against Mr. Spellman in Queens Civil Court, Housing Part.

69.    On September 7, 2018, Defendants' counsel requested a third-party verification of Plaintiff's domestic violence survivor status pursuant to 24 CFR § 5.2007(b)(2).

70.    On October 1, 2018, Plaintiff complied with the aforementioned request by sending a letter from Plaintiff's caseworker at Safe Horizon at the New York City Family Justice Center in Queens, New York.

71.    To date, no responsive correspondence from Defendants or their counsel has been received by Plaintiff or her counsel.

72.    Bifurcation of the lease and/or an emergency transfer is urgent, given the currently pending nonpayment eviction proceeding, Ocean Park Acquisition, L.P. v. Spellman, Index Number 63395/18. Upon information and belief, a possessory judgment has been issued against Mr. Spellman because he has failed to pay the rent in full for the Subject Premises. Plaintiff cannot afford the rent nor can she obtain rental arrears assistance from the Department of Social Services when she is not currently living in the Subject Premises. As a result, she cannot pay the arrears and stop the eviction, which may result in permanent loss of the affordable home to which she is entitled.

73.    To date, Plaintiff has been provided no written decision regarding her requests pursuant to VAWA, nor has she been offered a hearing of any kind where she

would be able to present the facts supporting her claim that she is entitled to bifurcation of the lease, and/or an emergency transfer to another apartment, or any opportunity to challenge the Defendants' decision making with respect to her requests.

74.     Statistics show that women are overwhelmingly the victims of domestic violence. An estimated 1.3 million women are the victims of assault by an intimate partner each year, and about 1 in 4 women will experience intimate partner violence in their lifetimes. See, Centers for Disease Control and Prevention, National Center for Injury Prevention and Control, Costs of Intimate Partner Violence Against Women in the United States (2003).

75.     The U.S. Bureau of Justice Statistics found that 85% of victims of domestic violence are women.   See, U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics Crime Data Brief, Intimate Partner Violence, 1993-2001 (2003).

76.     In 2009, women were about five times as likely as men to experience domestic violence. See, Jennifer R. Truman & Michael R. Rand, U.S. Department of Justice, Criminal Victimization, 2009 (2010).

77.     These statistics show that discrimination against victims of domestic violence constitutes discrimination against women.

78.     These statistics further show that discrimination against victims of domestic violence has a disparate impact on women.

## CAUSES OF ACTION

### First Cause of Action: Violation of Due Process

79.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

80.     42 U.S.C. § 1983 creates a cause of action on behalf of "any citizen of the United States or other person within the jurisdiction thereof" who has been deprived of "any rights, privileges or immunities secured by the Constitution and laws" against any person acting "under color of any statute, ordinance, regulation or usage."

81.     Upon information and belief, Defendants are owner and managers of the Subject Premises responsible for its operation in accordance with HUD rules and regulations and applicable federal law.

82.     Defendants are charged by HUD with implementing VAWA procedures including hearings to resolve tenant requests for protection, and as such Defendants are state actors.

83.     Defendants, in their capacity as owner and manager of the Subject Premises, are "persons" acting "under color" of City and State law within the meaning of 42 U.S.C. § 1983.

84.     Plaintiff has a property interest in the Subject Premises, a HUD subsidized affordable apartment for which she remains eligible. Pursuant to HUD rules and regulations including the provisions of the HUD Multifamily Handbook, Plaintiff is entitled to the continuation of her tenancy absent suspension of the program, ineligibility for the program, or her undertaking actions that violate HUD rules and regulations or a substantial lease violation subjecting her to eviction.

85.     Plaintiff's tenancy has effectively been terminated given Defendants' failure to comply with VAWA given her exclusion from the apartment, Defendants'

inaction and/or denial of her requests, and Defendants' concurrent efforts to obtain a warrant of eviction against the subject apartment.

86.     Defendants' stated reason for denying Plaintiff's request, that a criminal order of protection has been issued against her, and/or that Defendants' rules have changed without further explanation is contrary to the protections in place for tenant complainants and violates Plaintiff's due process rights.

87.     Plaintiff was deprived of and continues to be deprived of her property interest in the Subject Premises without sufficient notice or a chance to be heard regarding her qualification for the VAWA protections she requested.

88.     Defendants have thus deprived Plaintiff of a property interest without due process of law, in violation of the 14th Amendment to the United States Constitution.

89.     As a direct and proximate result of Defendants' acts and omissions complained of herein, Plaintiff has suffered and continues to suffer damages including deprivation of her affordable home for herself and her children.

### Second Cause of Action:

### Violations of Title VIII of the Civil Rights Act (Fair Housing Act) under 42 U.S.C. §3604(a) – Disparate Treatment

90.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

91.     Plaintiff is a woman and a survivor of domestic violence.

20

92.     Defendants were on notice that since the domestic violence incident that occurred on April 25, 2018, Plaintiff has been displaced from the Subject Premises and her domestic abuser Mr. Spellman remains in the Subject Premises.

93.     Nonetheless, when Plaintiff requested bifurcation of the lease and an emergency transfer, Defendant verbally denied Plaintiff's requests for the discriminatory reason that an order of protection had been issued against Plaintiff, and failed to offer a hearing with full knowledge of the foreseeable discrimination against women which would result.

94.     To the extent that Defendants as a policy and practice fail to maintain procedures compliant with VAWA, including with respect to bifurcation and emergency transfer requests, such practice has a clear and foreseeable disparate impact on women situated similarly to Plaintiff.

95.     As a matter of policy, pattern, and practice, Defendant do not notify domestic violence survivors of when hearings will take place and do not provide a chance for domestic violence survivors to be heard.

96.     Defendants' discriminatory actions have deprived Plaintiff of the affordable apartment which she is entitled to continue to reside in with her minor children.

97.     Defendants' discriminatory actions will soon result in the termination of the tenancy without meaningful participation from Plaintiff because Defendant commenced a nonpayment eviction proceeding against Plaintiff's abuser as he has failed to pay the rent in full. Plaintiff cannot afford the rent nor can she obtain rental arrears assistance from the Department of Social Services when she is not currently living in the

Subject Premises. As a result, she cannot pay the arrears and stop the eviction, which may result in permanent loss of the affordable home to which she is entitled.

98.     Defendants' actions constitute discrimination against the Plaintiff on the basis of sex and gender contrary to the provisions of the Fair Housing Act.

**Third Cause of Action:**

**Violations of Title VIII of the Civil Rights Act (Fair Housing Act) under 42 U.S.C.**

**§3604(b) – Disparate Impact**

99.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

100.     Plaintiff is a woman and a survivor of domestic violence.

101.     As stated above, statistics show that women are overwhelmingly the victims of domestic violence.

102.     To the extent that Defendants as a policy and practice fail to maintain procedures compliant with VAWA, including with respect to bifurcation and emergency transfer requests, such practice has a disparate impact on women situated similarly to Plaintiff.

103.     Defendants' discriminatory policy and practice will soon result in the termination of the tenancy without meaningful participation from Plaintiff because Defendants commenced a nonpayment eviction proceeding against Plaintiff's abuser as he has failed to pay the rent in full.   Plaintiff cannot afford the rent without an income recertification, nor can she obtain rental arrears assistance from the Department of Social Services when she is not currently living in the Subject Premises. As a result, she cannot

pay the arrears and stop the eviction, which may result in permanent loss of the affordable home to which she is entitled.

104.    Defendants' actions constitute discrimination against the Plaintiff on the basis of gender contrary to the provisions of the Fair Housing Act.

**Fourth Cause of Action:**

**Violations of New York City Human Rights Law – Disparate Treatment**

105.    Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

106.    Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

107.    Plaintiff is a woman and a survivor of domestic violence.

108.    Defendants were on notice that since the domestic violence incidence that occurred on April 25, 2018, Plaintiff has been displaced from the Subject Premises and her abuser husband has been remaining in the Subject Premises.

109.    Nonetheless, when Plaintiff requested bifurcation of the lease and an emergency transfer, Defendants verbally denied Plaintiff's requests and failed to offer a hearing with full knowledge of the foreseeable discrimination against women which would result.

110.    Defendants' discriminatory actions will soon result in the termination of the tenancy without meaningful participation from Plaintiff because Defendant commenced a nonpayment eviction proceeding against Plaintiff's abuser as he has failed to pay the rent in full.

111.   This constitutes discrimination against the Plaintiff on the basis of gender contrary to the New York City Human Rights Law.

**Fifth Cause of Action:**

**Violations of New York City Human Rights Law –Disparate Impact**

112.   Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

113.   Plaintiff is a woman and a survivor of domestic violence.

114.   As stated above, statistics show that women are overwhelmingly the victims of domestic violence.

115.   Defendants were on notice that since the domestic violence incidence that occurred on April 25, 2018, Plaintiff has been displaced from the Subject Premises and her abuser husband has been remaining in the Subject Premises.

116.   Nonetheless, when Plaintiff requested bifurcation of the lease and an emergency transfer, Defendants verbally denied Plaintiff's requests and even failed to offer a hearing with full knowledge of the foreseeable discrimination against women which would result.

117.   Defendants' discriminatory actions will soon result in the termination of the tenancy without meaningful participation from Plaintiff because Defendant commenced a nonpayment eviction proceeding against Plaintiff's abuser as he has failed to pay the rent in full .

118.   This constitutes discrimination against the Plaintiff on the basis of gender contrary to the New York City Human Rights Law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that this Court:

(1)     Enter a final judgment declaring that Defendants violated:

      a.     Plaintiff's right to due process under the Constitution of the United States;

      b.     Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.*, and its implementing regulations;

      c.     The New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, and its implementing regulations; and

      d.     Title VI of the Violence Against Women Reauthorization Act of 2013, 24 CFR §§ 5.2001 *et. seq.*, and its implementing regulations.

(2)     Enter final, mandatory injunctive relief requiring Defendants to restore Plaintiff to the Subject Premises via the VAWA bifurcation protocol and during any intervening period, offer her appropriate emergency accommodations pursuant to VAWA; or in the alternative, schedule a hearing at which Plaintiff will have an opportunity to be heard;

(3)     Enter a final judgment awarding Plaintiff actual, compensatory, and nominal damages for injuries and expenses incurred as a result of the preceding violations;

(4)     Allow Plaintiff reasonable attorney's fees, costs and disbursements pursuant to 42 U.S.C. §§ 1988 and 3613, and N.Y.C. Admin. Code § 8-502; and

(5)     Grant such other and further relief as this Court may deem just and proper.

Dated: November 21, 2018
      Queens, NY

Queens Legal Services
8900 Sutphin Blvd., 5th Floor
Jamaica, NY 11435
Counsel for Plaintiff
by: Edward Josephson (EJ7815)
    Melissa Banks (MB2933)
    Heejung Kook (HK4382)